**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**

| | |
|---|---|
| **SCOTT BAILEY**<br>3022 Burning Tree Lane<br>Cincinnati, OH 45237<br>Plaintiff,<br>v.<br><br>**VANTIV USA, Inc.**<br>8500 Governors Hill Drive<br>Cincinnati, OH 45249<br>Defendant. | CASE NO.: 1:18-cv-140<br><br>Honorable Judge:<br>Magistrate Judge: |

**COMPLAINT WITH JURY DEMAND ENDORSED HEREON**

Comes now Plaintiff Scott Bailey ("Plaintiff"), by the undersigned attorney and for his Complaint, states as follows:

**PARTIES**

1. Plaintiff at all times relevant herein was a resident of the State of Ohio and the County of Hamilton.

2. Defendant VANTIV USA, Inc. ("VANTIV") is a corporation that provides in-store and online credit card processing for merchants worldwide; including in Ohio.

3. VANTIV conducts business in Ohio from its corporate offices located in Cincinnati, OH.

4. VANTIV is an employer within the meaning of federal and state law.

**JURISDICTION AND VENUE**

5. This court has jurisdiction to hear this case pursuant to *28 U.S.C. § 1331* because the action arises under the laws of the United States.

6. Plaintiff's Count 1 arises under Age Discrimination in Employment Act ("*ADEA*"), *29 U.S.C. § 621 et seq.*

7. Plaintiff's Count 7 arises under the Employee Retirement Income Security Act ("ERISA"), 29 *U.S.C. § 2001, et seq*.

8. Supplemental jurisdiction over pending state claims lies with this Court pursuant to *28 U.S.C. § 1367*.

9. Venue is proper in the Southern District of Ohio, Western Division, pursuant to *28 U.S.C. § 1391(b)* because the events giving rise to these claims occurred in this division and district.

10. On December 5, 2017 the EEOC mailed its Notice of Right to Sue to Plaintiff.

**FACTS**

11. Plaintiff is a male born on June 20, 1962.

12. At all times relevant to this litigation Plaintiff worked out of VANTIV's offices in Cincinnati, OH.

13. Plaintiff served 4½ years in the military and thereafter attended Miami University.

14. Upon graduation from Miami University in 1987 Plaintiff was employed in the information services industry.

15. In or about February 2016 Plaintiff began working for InSight Global ("Insight"), a provider of staffing services in the information technology, finance and engineering fields.

16. At Insight Plaintiff was assigned to support VANTIV.

17. In May 2016 Bailey informed Melvin Van Cleave ("Van Cleave"), then VANTIV's Chief Technology Officer ("CTO"), that he had been approached about serving in a Chief Information Officer role for a local company.

18. Plaintiff also told Bill Weingart ("Weingart"), Van Cleave's supervisor, about his discussions regarding the Chief Information Officer position.

19. In June 2016 Van Cleave recruited Bailey to join VANTIV as Senior Leader, Technology, in the Infrastructure Project Management Office ("PMO").

20. VANTIV's Human Resources ("HR") Recruiter offered Plaintiff an annual salary of $245,000.00 plus bonus and 4½ weeks' vacation.

21. The HR Recruiter told Plaintiff that he had a "long term upside" if he joined VANTIV.

22. Based on these representations Plaintiff discontinued discussions regarding the Chief Information Officer opportunity and accepted the offer from VANTIV.

23. Plaintiff would not have discontinued discussions about the Chief Information Officer opportunity but for the representations made by representatives of VANTIV.

24. As Plaintiff's start date approached VANTIV's new internal HR Recruiter advised Plaintiff that the top salary that VANTIV could offer was $201,000.00.

25. Plaintiff was concerned about the reduced salary but accepted the position after he was reassured that in addition to his salary, bonus eligibility and vacation that Plaintiff would be granted stock options that vested in three (3) years.

26. Plaintiff joined VANTIV as a Senior Leader, Technology, for the PMO in August 2016.

27. Plaintiff supervised 23 technology team members whose responsibilities included project management of the infrastructure and security for VANTIV.

28. In addition to his supervisory responsibilities Plaintiff was tasked with upgrading the quality of PMO services and replacing staff members who could not meet VANTIV's expectations.

29. Plaintiff initially reported to Van Cleave and Weingart.

30. Van Cleave and Weingart assured Plaintiff that he would receive their support in his efforts to improve the quality of the PMO.

31. Soon after joining VANTIV Plaintiff began to report to James Black ("Black").

32. Black re-assured Plaintiff that he would support Plaintiff's efforts.

33. Black also said that he anticipated that Plaintiff would become his peer and would work directly for Mark Heimbouch, VANTIV's Chief Operating Officer.

34. Plaintiff was regularly commended for his efforts.

35. In March 2017 Plaintiff received the maximum prorated 2016 bonus for those in his salary band.

36. Early in his tenure Plaintiff learned that Kathy Burkett ("Burkett"), a female, who previously been a manager in the PMO, had been demoted.

37. Despite the demotion Burkett was in the same salary band as the Plaintiff.

38. Burkett reported to Van Cleave at the start of Plaintiff's employment but soon thereafter she began to report to Plaintiff.

39. Burkett was insubordinate and uncooperative during the entire time that she worked for Plaintiff and her work was substandard**.**

40. Burkett was included on a list of VANTIV employees to be laid off at end of 2016; however John Turner ("Turner"), VANTIV's Vice-President of Human Resources, removed her name from the list insisting that she needed to be afforded progressive discipline.

41. On May 3, 2017 Plaintiff was scheduled for a meeting with Black.

42. Turner attended the meeting at which time Plaintiff was informed that he was being discharged.

43. Plaintiff was 54 at the time of his termination.

44. Plaintiff was never disciplined nor was he on a Performance Improvement Plan or probationary status at the time of his termination.

45. Plaintiff was not afforded progressive discipline.

46. Turner was a friend of Burkett, and his participation in the decision to terminate Plaintiff was, in part, in retaliation for Plaintiff having insisted that Burkett perform her duties.

47. Plaintiff's discharge was motivated, in part, by age animus.

48. Other Vantiv managers over 40, who were successful in their jobs, were also discharged for no apparent reason other than their age.

49. Plaintiff's termination permitted younger and less qualified persons to obtain or retain employment with VANTIV.

50. Plaintiff was treated differently than Burkett and other females who were afforded progressive discipline, or offered severance prior to their termination.

51. Plaintiff's professional reputation has been damaged within the local PMO and consulting community as a result of VANTIV's action.

**FIRST CLAIM FOR RELIEF**

(Age Discrimination in Employment Act / 29 U.S.C. § 621 et seq.)

52. All previous allegations are incorporated by reference as if fully rewritten.

53. Plaintiff was over the age of forty (40) at the time of his termination and was qualified for his position at all relevant times.

54. Plaintiff was terminated on account of his age in violation of the Age Discrimination in Employment Act, *29 U.S.C. § 621 et seq*.

55. Plaintiff's termination permitted the hiring and retention of a substantially younger, less qualified employee.

56. As a result of all of VANTIV' conduct Plaintiff has suffered loss of wages and bonus, and will continue to suffer loss of wages and bonus into the indefinite future.

57. Plaintiff has also suffered loss of fringe benefits, loss of medical coverage, loss of pension and other retirement benefits.

58. Plaintiff has also suffered distress and mental anguish.

59. VANTIV's actions were intentional, willful, wanton and malicious in nature.

**SECOND CLAIM FOR RELIEF**
(Age Discrimination in Violation of O.R.C. § 4112)

60. All previous allegations are incorporated by reference as if fully rewritten.

61. Plaintiff's termination was motivated by his age, and permitted VANTIV to retain, or hire substantially younger employees under 40, who were less qualified than Plaintiff.

62. By engaging in the conduct set forth in the paragraphs above, VANTIV has discriminated against Plaintiff on the basis of his age, thus violating Ohio Revised Code *§4112.14 and 4112.99*.

63. As a result of all of VANTIV conduct Plaintiff has suffered loss of wages and bonuses, and will continue to suffer loss of wages into the indefinite future.

64. Plaintiff has also suffered loss of fringe benefits, loss of medical coverage, loss of pension and other retirement benefits.

65. Plaintiff has also suffered distress and mental anguish.

66. VANTIV's actions were intentional, willful, wanton and malicious in nature.

**THIRD CLAIM FOR RELIEF**
**(Disparate Treatment / Age)**

67. All previous allegations are incorporated by reference as if fully rewritten.

68. Plaintiff was treated in a different manner than other employees of VANTIV, which disparate treatment was motivated by Plaintiff's age.

69. As a result of all of VANTIV conduct as set forth above, Plaintiff has suffered loss of wages and bonus, and will continue to suffer loss of wages and bonus into the indefinite future.

70. Plaintiff has also suffered loss of fringe benefits, loss of medical coverage, loss of pension and other retirement benefits.

71. Plaintiff has also suffered emotional distress and mental anguish.

72. VANTIV's actions were intentional, willful, wanton and malicious in nature.

**FOURTH CLAIM FOR RELIEF**
**(Disparate Treatment / Reverse Discrimination)**

73. All previous allegations are incorporated by reference as if fully rewritten.

74. Plaintiff was not afforded Progressive Discipline, or the opportunity to address his claimed deficiencies, which was accorded to VANTIV's female employees, including Burkett.

75. VANTIV is one of those unusual employers that sought to assure that females, even those less qualified than males, were retained due to the low percentage of women in the technology field.

76. As a result of all of VANTIV conduct as set forth above, Plaintiff has suffered loss of wages and bonus, and will continue to suffer loss of wages and bonus into the indefinite future.

77. Plaintiff has also suffered loss of fringe benefits, loss of medical coverage, loss of pension and other retirement benefits.

78. Plaintiff has also suffered emotional distress and mental anguish.

79. VANTIV's actions were intentional, willful, wanton and malicious in nature.

**FIFTH CLAIM FOR RELIEF**
(Breach of Contract)

80. All previous allegations are incorporated by reference as if fully rewritten.

81. During his tenure with VANTIV, Plaintiff and other employees were assured that claimed violations of company rules and regulations would be reviewed pursuant to VANTIV's Progressive Discipline Policy, and that employees would be afforded progressive discipline.

82. VANTIV did not apply its progressive discipline policy and procedures to Plaintiff.

83. By failing to adhere to its progressive discipline policy VANTIV breached its express and / or implied contractual obligation to Plaintiff.

84. As a result of VANTIV's conduct, Plaintiff has suffered loss of wages and bonuses, and will continue to suffer loss of wages and bonuses into the indefinite future.

**SIXTH CLAIM FOR RELIEF**
(Promissory Estoppel)

85. All previous allegations are incorporated by reference as if fully rewritten.

86. VANTIV made clear and unambiguous promises to the Plaintiff regarding opportunities and benefits that he would receive if he joined VANTIV.

87. Plaintiff reasonably relied upon those promises.

88. Plaintiff's reliance on those promises was foreseeable.

89. Plaintiff's reliance on VANTIV's promises resulted in the Plaintiff leaving his position with InSight, with the concomitant loss of income and opportunity with InSight.

90. Plaintiff's reliance on VANTIV's promises resulted in Plaintiff discontinuing his discussions for an opportunity as a Chief Information Office.

91. As a result of the promises by VANTIV, Plaintiff was injured when he was terminated by VANTIV less than one year after joining the company.

**SEVENTH CLAIM FOR RELIEF**
**(ERISA -29 U.S.C. § 1001, et seq.)**

92. All previous allegations are incorporated by reference as if fully rewritten.

93. VANTIV granted certain employee benefits to Plaintiff.

94. VANTIV knowingly terminated Plaintiff's employment to avoid the vesting of these benefits in violation of ERISA.

95. VANTIV conduct was willful, wanton and malicious in nature.

96. As a direct and proximate result of VANTIV' unlawful conduct, Plaintiff has suffered substantial damages and he is entitled to judgment.

97. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered substantial damages and he is entitled to judgment.

**WHEREFORE**, Plaintiff Clyde Bailey demands the following relief:

1. That Plaintiff be reinstated to his former position with VANTIV;
2. That Plaintiff be awarded all lost pay and benefits;
3. That Plaintiff be awarded front and back pay;
4. That Plaintiff be awarded compensatory damages in an amount not less than $250,000.00;
5. That Plaintiff be awarded punitive damages;
6. That Plaintiff be awarded reasonable attorneys' fees and costs incurred in connection with maintaining this action;
7. That Plaintiff be awarded prejudgment interest; and
8. That Plaintiff be awarded such other legal and equitable relief to which he may be entitled.

Respectfully submitted,

/s/ Neal D. Jacobs
Neal D. Jacobs (#0073218)
Attorney for Plaintiff, Scott Bailey
8118 Corporate Way, Suite 110
Mason, Ohio 45040
Phone: (513) 229-0302
Facsimile: (513) 229-0302
neal@masonlawyers.net

**JURY DEMAND**

Plaintiff Clyde Bailey demands trial by jury on all issues in the within cause.

/s/ Neal D. Jacobs
Neal D. Jacobs